UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **DATAWIDGET, LLC,**<br><br>    Plaintiff<br><br>  v.<br><br>**TECRA SYSTEMS, INC. AND PROPAGO, LLC,**<br><br>    Defendants | **Case No. 6:20-cv-00674**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff, DataWidget, LLC, by and through its attorneys, for its Complaint for Patent Infringement against defendants, Tecra Systems, Inc. and Propago, LLC (collectively, "Defendants"), alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for patent infringement arising under the patent laws of the United States, Title 35, Section 101 *et seq.*, United States Code.

**PARTIES**

2. Plaintiff, DataWidget, LLC f/k/a Elford LLC ("DataWidget"), is a limited liability company organized and existing under the laws of Arizona, with its principal place of business in Scottsdale, Arizona. DataWidget is the owner by assignment of U.S. Patent No. 10,102,557 ("the '557 Patent"), including the exclusive right to recover for past and future infringement.

3. Defendant Tecra Systems Inc. is Michigan corporation business with a principal place of business in Austin, Texas.

4. Defendant Propago LLC is a Texas limited liability company with a principal place of business in Austin, Texas.

5. Non-party Compact Information Systems, Inc. ("Compact"), is a Washington corporation with a principal place of business in Redmond, Washington.

6. Non-party Mailers Haven, LLC ("Mailers Haven") is a limited liability company organized under the laws of the State of California with a principal place of business in Valencia, California.

7. Non-party Accudata Integrated Marketing, Inc. ("Accudata") is a Florida corporation with a principal place of business in Fort Myers, Florida.

## JURISDICTION

8. This action arises under the Patent Act, 35 U.S.C. § 101 *et seq*. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9. Personal jurisdiction over Defendants is proper in this District because Defendants used and sold access to a system in the District that infringes upon the '557 Patent. Further, Defendants' conduct has established minimum contacts within the District such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.

## VENUE

10. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1400(b) because Defendants each have a regular and established place of business in this District and have committed acts of patent infringement within this District.

## FACTS

### The '557 Patent

11. The '557 Patent, entitled SYSTEM AND METHOD FOR SELLING CUSTOMER-SPECIFIC DATA SUBSETS ON A THIRD-PARTY WEBSITE USING A WEB WIDGET, was duly and legally issued on October 16, 2018, and names Joel Brown as the inventor. A copy of the '557 Patent is attached as Exhibit 1. Also attached as Exhibit 2 and incorporated herein is a true and correct copy of the September 11, 2019 letter sent to Tecra Systems, Inc., which includes a copy of the '557 Patent.

12. Joel Brown assigned his rights to the '557 Patent to DataWidget, a company that employs his father, Graham Brown.

13. First, Joel Brown assigned to Eprintwerx International, LLC ("Eprintwerx"), the right to use the '557 Patent in its business, which involves working with e-commerce vendors and e-commerce platform builders to help them develop web-to-print and direct-mail solutions. Entities like Compact, Accudata, and Mailers Haven operate in direct competition with Eprintwerx.

14. Second, Joel Brown assigned to DataWidget f/k/a Elford LLC, the right to enforce the '557 Patent, including the right to initiate enforcement proceedings, file lawsuits, and offer limited licenses.[1]

---

[1] Effective January 23, 2020, Elford LLC changed its name to DataWidget LLC.

15. By assignment, DataWidget owns certain rights under the '557 Patent, including enforcement rights.

16. The system described in the '557 Patent comprises a system for selling individually-tailored customer-specific data subsets (for example mailing lists used in direct-mail campaigns) on a third-party website using a data seller widget.

17. This system involves several aspects, including[2]:

   a. An entity that stores data on a server and sells that data (the "Data Seller");

   b. An entity that offers to sell printing services (including direct-mail campaigns) to customers through an e-commerce website (the "Vendor") or a software development entity (the "Platform Builder") that builds e-commerce platforms that can be licensed to the Vendor; and

   c. A data extraction widget (the "Widget") that allows a customer to view, extract, and cause data to be downloaded from the Data Seller's database, purchase the data from the Vendor and simultaneously purchase printing services from the Vendor Seller's dataset, view and query data, and order and extract subsets of that data.

18. The Widget is a piece of software, that can be integrated into a webpage, that allows a customer to view and query the Data Seller's database contents from the Vendor's webpage and to purchase data subsets from the Vendor's webpage.

---

[2] The description of the '557 Patent throughout the complaint are for narrative purposes only; Exhibits 2 and 4 describe fully each claim of the '557 Patent.

4

19. The '557 Patent creates a system where the Vendor or Platform Builder, such as Tecra and Propago, can integrate the Widget into a website, giving customers a seamless experience when accessing and querying the Data Seller's data, determining which data the customer would like to purchase (or license), paying for that data, downloading the desired data, and ordering printing services from the Vendor in a single transaction (often with the data, such as names and addresses, applied to the printing services).

20. As a result, the '557 Patent is extremely useful to individual customers, business customers, and franchisors because it increases efficiency, allowing customers to simultaneously identify relevant data sets, purchase or license data sets, and purchase printing services.

21. Eprintwerx licenses its technology, including customized versions of the Widget, to Platform Builders, Vendors, and Data Sellers, allowing them to operate the system comprising the '557 Patent, which allows the Platform Builders and Vendors to better serve their customers.

22. The '557 Patent is valid and enforceable.

### Compact Copies the Widget to Aid Infringement of the '557 Patent

23. Upon information and belief, some time after November 20, 2009, Compact developed a software application that performs the same functions as the Widget and began selling, and/or licensing the use of the software identical to or functionally equivalent to the Widget to e-commerce vendors and "plugin providers."

24. Plugin providers are entities like Accudata, Mailers Haven and USAData that: 1) sell and/or license the use of applications that perform the same functions as the

Widget to e-commerce vendors; and 2) provide mechanisms for e-commerce vendors to give the e-commerce vendors' customers access to databases owned by data sellers.

25. Upon information and belief, Compact has been aware of the '557 Patent for many years and has knowingly and wilfully continued to sell and/or license a software application that serves no other purpose than to be implemented into systems that infringe upon the '557 Patent.

26. Compact and Mailers Haven were put on notice of the pending application for the '557 Patent as early as January 20, 2010 and were informed of the belief that Compact had copied or was actively working to copy the widget described in the '557 Patent. A copy of the January 20, 2010 letter that was sent is attached as Exhibit 3.

27. Upon information and belief, Compact built and operates software that replicates the functions of the widget described in the '557 Patent. This software is maintained together with the data on Compact's servers.

28. Compact permits the license and sale of its data through licenses it grants to other data sellers (such as Accudata and Mailers Haven), plugin providers (such as Tecra and Propago), and vendors.

### Accudata, Mailers Haven, USAData, and Compact Customize Applications Solely for use in Infringing Systems.

29. Upon information and belief, Accudata is owned by and/or controlled by Compact.

30. Like Compact, USAData, Accudata, and Mailers Haven sell and/or license software applications that serve no purpose other than to be implemented into systems that infringe upon the '557 Patent. Upon information and belief, the Accudata and

6

Mailers Haven license the software applications built to infringe upon the '557 Patent from Compact and resell the data provided from Compact.

31. These software applications are specifically designed to be integrated into e-commerce websites so that those websites' customers can view data, purchase data, and purchase printing services from a single website in a single transaction.

32. USAData, Accudata, and Mailers Haven will customize these applications for different e-commerce vendors.

33. Upon information and belief, Compact, USAData, Accudata, and Mailers Haven store their data on at least one database server.

34. USAData, Accudata, and Mailers Haven sell the data in their database(s) to customers through e-commerce vendors and perform the role of Data Sellers as described in the '557 Patent.

### Tecra Operates a System that Infringes upon the '557 Patent.

35. Tecra is an e-commerce vendor and e-commerce platform builder that operates the website [www.Tecra.com](www.Tecra.com) and licenses software and software systems that provide web-to-print storefronts for integration into or function as e-commerce websites.

36. Tecra partners with Accudata and USAData to provide data to Tecra's customers within the Tecra storefronts.

37. Upon information and belief, Tecra builds for customers entire website storefronts (a "Storefront") that integrate into those websites a software application built by Accudata and USAData that replicates the features of the Widget in the '557 Patent.

38. Upon information and belief, Tecra licenses the Storefront that is configured to:

   a. Have a direct connection between the software application and Storefront operator's server(s);

   b. Have a direct connection between the software application and Accudata's, Compact's, USAData's, and/or Mailers Haven's server(s), which allows Tecra's customer to enable users of the Storefront to directly query Accudata's, Compact's, USAData's, and/or Mailers Haven's database(s);

   c. Have a direct connection between Accudata's, Mailers Haven's, USAData's, and/or Compact's server(s) and the Storefront operator's server(s), which communicates to the Storefront operator of the quantity/type of data its customer is purchasing in order to provide a sales price for that data; and

   d. Allow Tecra's customers to enable users of the Storefront to search Accudata's, Compact's, USAData's, and/or Mailers Haven's database, purchase or license a subset of data, and order printing services in the same transaction, all from the Storefront operator's website.

39. Tecra creates Storefronts that allow customers to search Accudata's, Compact's, USAData's, and/or Mailers Haven's database(s), purchase or license data and order printing services and Tecra charges customers for the creation of the Storefront.

40. Through the creation of Storefronts, Tecra both uses a system that infringes upon the '557 patent and sells access to that system.

**Propago Operates a System that Infringes upon the '557 Patent.**

41. Propago is an e-commerce vendor and e-commerce platform builder that operates the website [www.Propago.com](www.Propago.com) and licenses software and software systems that provide web-to-print storefronts for integration into or function as e-commerce websites.

42. Propago partners with Accudata to provide data to Propago's customers within the Propago storefronts.

43. Upon information and belief, Propago builds for customers entire website storefronts (a "Storefront") that integrate into those websites a software application built by Accudata that replicates the features of the Widget in the '557 Patent.

44. Upon information and belief, Propago licenses the Storefront that is configured to:

   a. Have a direct connection between the software application and Storefront operator's server(s);

   b. Have a direct connection between the software application and Accudata's, Compact's, and/or Mailers Haven's server(s), which allows Propago's customer to enable users of the Storefront to directly query Accudata's, Compact's, and/or Mailers Haven's database(s);

   c. Have a direct connection between Accudata's, Mailers Haven's, and/or Compact's server(s) and the Storefront operator's server(s), which communicates to the

      Storefront operator of the quantity/type of data its customer is purchasing in order to provide a sales price for that data; and

   d. Allow Propago's customers to enable users of the Storefront to search Accudata's, Compact's, and/or Mailers Haven's database, purchase or license a subset of data, and order printing services in the same transaction, all from the Storefront operator's website.

45. Propago creates Storefronts that allow customers to search Accudata's, Compact's, and/or Mailers Haven's database(s), purchase or license data and order printing services and Propago charges customers for the creation of the Storefront.

46. Through the creation of Storefronts, Propago both uses a system that infringes upon the '557 patent and sells access to that system.

## DataWidget Notified Defendants and Others of Their Infringing Conduct

47. On September 11, 2019, DataWidget notified Defendants Tecra, Propago, and others of the existence of the patent application that resulted in the '557 Patent.

48. Each of these entities were provided with a copy of the '557 Patent and informed of the nature and scope of DataWidget's rights.  *See* Exhibit 2 and Exhibit 4, September 11, 2019 letters to Tecra and Propago respectively.

49. DataWidget's September 11, 2019 letters explained its concern that Tecra, Propago, and other e-commerce vendors may be operating systems that infringe upon the '557 patent.  DataWidget requested that Tecra and Propago participate in DataWidget's investigation into potential infringement, but both Defendants declined to participate.

50. Thus, since at least September 11, 2019, Tecra, Propago, Compact, and Accudata have had actual knowledge of the '557 Patent.

51. Upon information and belief, Tecra, Propago, Compact, and Accudata continue to infringe upon the '557 Patent.

**COUNT ONE AGAINST TECRA**
(Direct Infringement of U.S. Patent No. 10,102,557)

52. DataWidget incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

53. Upon information and belief, Tecra has and continues to infringe the '557 Patent by making, using, or selling, and/or offering for sale a system in the United States that embodies or uses the inventions claimed in the '557 Patent.

54. Tecra has thus directly (either literally or under the Doctrine of Equivalents) infringed claim 1 of the '557 Patent by making, using, selling, offering to sell, or importing, without authority, systems that are covered by the claims of the '557 Patent.

55. As a result of Tecra's infringement of the '557 Patent, DataWidget has been and continues to be damaged in an amount to be determined at trial.

56. DataWidget has suffered irreparable injury for which there is no adequate remedy at law and will continue to suffer such irreparable injury unless Tecra's infringement of the '557 Patent is enjoined by this Court.

57. Tecra does not have a valid license or other authorization to make, use, offer for sale, sell, or import the inventions covered by the claims of the '557 Patent.

58. Tecra's infringement of the '557 Patent is exceptional and entitles DataWidget to enhanced damages and reasonable attorneys' fees incurred in prosecuting this action under 35 U.S.C. §§ 284 - 285.

**COUNT TWO AGAINST PROPAGO**
(Direct Infringement of U.S. Patent No. 10,102,557)

59. DataWidget incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

60. Upon information and belief, Propago has and continues to infringe the '557 Patent by making, using, or selling, and/or offering for sale a system in the United States that embodies or uses the inventions claimed in the '557 Patent.

61. Propago has thus directly (either literally or under the Doctrine of Equivalents) infringed claim 1 of the '557 Patent by making, using, selling, offering to sell, or importing, without authority, systems that are covered by the claims of the '557 Patent.

62. As a result of Propago's infringement of the '557 Patent, DataWidget has been and continues to be damaged in an amount to be determined at trial.

63. DataWidget has suffered irreparable injury for which there is no adequate remedy at law and will continue to suffer such irreparable injury unless Propago's infringement of the '557 Patent is enjoined by this Court.

64. Propago does not have a valid license or other authorization to make, use, offer for sale, sell, or import the inventions covered by the claims of the '557 Patent.

65. Propago's infringement of the '557 Patent is exceptional and entitles DataWidget to enhanced damages and reasonable attorneys' fees incurred in prosecuting this action under 35 U.S.C. §§ 284 - 285.

**WHEREFORE**, Plaintiff, DataWidget, LLC, requests judgment against Tecra Systems Inc. and Propago LLC, as follows:

1. Adjudging that Defendants Tecra Systems Inc. and Propago LLC have infringed the '557 Patent in violation of 35 U.S.C. § 271(a);

2. Adjudging Defendants jointly and severally for infringement upon the '557 Patent;

3. Enjoining Defendants, Tecra Systems Inc. and Propago LLC, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all of those in active concert and participation with any of the foregoing persons or entities from infringing, contributing to the infringement of, or inducing infringement of the '557 Patent;

4. Ordering Defendants, Tecra Systems Inc. and Propago LLC, to account and pay damages adequate to compensate Plaintiff, DataWidget, LLC, for Defendants' infringement of the '557 Patent, in at least the amount of a reasonable royalty, in addition to pre-judgment and post-judgment interest and costs, pursuant to 35 U.S.C. § 284;

5. Increasing the damages award up to three times the actual amount assessed, pursuant to 35 U.S.C. § 284;

6. Finding this case exceptional and awarding Plaintiff, DataWidget, LLC, enhanced damages and its reasonable attorneys' fees, pursuant to 35 U.S.C. §§ 284 - 285; and,

7. Awarding DataWidget such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, DataWidget, LLC, hereby demands trial by jury on all issues raised by the Complaint.

Dated: July 24, 2020                           Respectfully submitted,

*/s/ R. W. Mort III*

Raymond W. Mort, III
Texas State Bar No. 00791308
raymort@austinlaw.com

**THE MORT LAW FIRM, PLLC**
100 Congress Ave, Suite 2000
Austin, Texas 78701
Tel/Fax: (512) 865-7950

*Pro Hac Vice Application Forthcoming*

Gregory C. Scaglione, # 19368
Andrew S. Tugan, # 26917
Koley Jessen P.C., L.L.O.
One Pacific Place, Suite 800
1125 South 103rd Street
Omaha, NE 68124-1079
(402) 390-9500
(402) 390-9005 (facsimile)
Greg.scaglione@koleyjessen.com
Andrew.tugan@koleyjessen.com

ATTORNEYS FOR PLAINTIFF